UNITED STATES DISTRICT COURT FOR THE DISTRICT OF UTAH

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | |
| ) | |
| Plaintiff, ) | Case No.    2:15-CR-107-WPJ |
| ) | |
| v. ) | MEMORANDUM OPINION |
| ) | AND ORDER |
| JOAN OSBORN, ) | |
| ) | FILED UNDER SEAL |
| Defendant. ) | |

### MEMORANDUM OPINION AND ORDER DENYING
### DEFENDANT'S MOTION FOR RECUSAL UNDER 28 U.S.C. § 455(a)

THIS MATTER comes before the Court upon the Motion to Recuse the Honorable Judge Johnson, filed October 7, 2015 (**Doc. 32**), by Defendant Joan Osborn ("Ms. Osborn"). Having considered the parties' briefs and the applicable law, the Court finds that Defendant's motion is not well-taken and, therefore, is **DENIED**.

#### BACKGROUND

Defendant's Motion argues that an alleged threat by Ms. Osborn to the undersigned, as presiding judge, is similar in nature to the threat supporting the underlying charge in this case and thus, the Motion presents a sufficient factual basis to warrant recusal by the undersigned. A threatening postcard, allegedly sent by Ms. Osborn, was presented to this Court by a Motion to Supplement the Record filed by the Government on October 7, 2015 (**Doc. 30**). The Government's Motion also included a Report of Investigation from the United States Marshals

Service dated October 5, 2015, which described the threats in the postcard as "very similar" to those that resulted in Ms. Osborn's underlying charge. Defendant's Motion further alleges that the Government improperly placed an extrajudicial source of information before the Court. The Government subsequently filed a Response to Motion to Recuse on October 15, 2015 (**Doc. 38**), arguing that the content of the correspondence would not raise a question about the Court's impartiality.

On October 26, 2015, this Court received an email from the Docketing/Intake Supervisor at the United States District Court for the District of Utah, and subsequently filed a Notice of Communication on November 4, 2015 (**Doc. 47**). The email contained a photocopy attachment of another arguably threatening postcard allegedly mailed by Ms. Osborn to this Court, appearing to be postmarked on October 23, 2015. This postcard contained similarly threatening but delusional language, such as "If you think your [sic] going to touch god your [sic] going to wish you were dead," and "Do you have something against the prophet muhammad."

## LEGAL STANDARD

Defendant filed her Motion for Recusal pursuant to 28 U.S.C. § 455(a), which requires recusal of a federal judge "in any proceeding in which his impartiality might reasonably be questioned." The general language of subsection (a) was designed to promote public confidence in the integrity of the judicial process by replacing the subjective standard with an objective test. *See Liljeberg v. Health Services Acquisition Corp.*, 486 U.S. 847, 858 n.7 (1988). Subsection (b)

of the statute requires that the judge "shall" disqualify himself "[w]here he has a personal bias or prejudice concerning a party, or personal knowledge of disputed evidentiary facts concerning the proceeding." 28 U.S.C. § 455b(1). "[W]hat matters is not the reality of bias or prejudice but its appearance." *Liteky v. United States*, 510 U.S. 540, 548 (1994). Thus, the question for the court in determining whether recusal is warranted is, "whether a reasonable person, knowing all the relevant facts, would harbor doubts about the judge's impartiality." *United States v. Cooley*, 1 F.3d 985, 993 (10th Cir. 1993). Federal law is clear that a motion for recusal must be decided by the judge whose recusal is requested. *See United States v. Balistrieri*, 779 F.2d 1191, 1202–03 (7th Cir. 1985).

## DISCUSSION

Ms. Osborn initially concedes that the Tenth Circuit has noted that threats or attempts to intimidate the judge will not ordinarily satisfy the requirements for disqualification under § 455(a). However, she points to *United States v. Greenspan* for support that threats against a judge by a defendant may warrant recusal. 26 F.3d 1001 (10th Cir. 1994). In *Greenspan*, during the pendency of a criminal case, the Federal Bureau of Investigation ("FBI") alerted the trial judge that the defendant was conspiring to kill the trial judge or members of his family, and that a number of people had allegedly contributed money for the hiring of a hit man. *See id.* at 1005. In determining that the trial judge should have recused himself, the Tenth Circuit pointed to a number of key factors: that the threat was not communicated directly to the judge but rather

came via the FBI, that the trial court accelerated the date of Greenspan's sentencing with the goal of having him incarcerated as quickly as possible, and that the trial court refused to grant a continuance even though defendant's counsel was appointed only two days prior to the sentencing. *See id.* at 1006. As the Government argues, and this Court agrees, *Greenspan* differs substantially from this instant case.

First, this case involves two direct threats mailed to the judge by the Defendant, while *Greenspan* involved an alleged conspiracy that the judge learned about only through information provided by the FBI. While this Court did learn about the correspondence through third parties, the Defendant addressed the correspondence directly to this judge. Indeed, the *Greenspan* court noted that, "if a death threat is communicated directly to the judge by a defendant, it may normally be presumed that one of the defendant's motivations is to obtain a recusal, particularly if [she] thereafter affirmatively seeks a recusal." *Id*. In *Greenspan*, there was no suggestion that the defendant intended the judge to learn of the threat before it was carried out. By contrast, here, Ms. Osborn's alleged postcards were addressed directly to this Court.

Second, while Ms. Osborn argues that *Greenspan* found important that the threat was not in connection with any official judicial proceeding, the Government argues that here, the postcard was brought to the Court's attention within the scope of the judicial proceeding, namely, its relevancy in determining Ms. Osborn's competency to stand trial. This Court denied the Government's Motion to Supplement the Record (**Doc. 30**), given that it would not have

4

altered this Court's decision-making process in determining whether Ms. Osborn was competent to stand trial. Regardless, the Court agrees that the postcard was brought to the Court's attention within the scope of the judicial proceeding.

     Ms. Osborn also points out that the United States Marshal's Service received the postcard allegedly sent by Ms. Osborn around two weeks before either the Marshal's Service or the Government acted on the alleged threat. Ms. Osborn argues that this is "troubling" and may indicate that the "Government is simply trying to cloud the Court's judgment" with "completely irrelevant information." However, in their Response to Opposition to Motion to Supplement the Record (**Doc. 31**), the Government argues that United States Marshals Service Senior Inspector Meg Smith ("Ms. Smith") reviewed the correspondence on or about September 28, 2015, but given Ms. Osborn's custody status, was not concerned with the content. Ms. Smith was subsequently on leave from September 29, 2015 until October 4, 2015. Upon attending the hearing of the Defendant on October 5, 2015, Ms. Smith realized that the mental status of Ms. Osborn was at issue, and subsequently brought the correspondence before the Assistant United States Attorney, who brought it to the attention of the Court a short time thereafter.

     This Court finds that there is no indication of intentional withholding of the correspondence until after the hearing on the part of the Government. Rather, it appears that both the Marshals and the Assistant United States Attorney attempted to provide the correspondence

to this Court in a timely manner once they realized it was relevant to the determination of Ms. Osborn's competency.

Further, this Court notes two additional factors that support the decision to deny Ms. Osborn's Motion for Recusal. First, as the Court in *Greenspan* noted, "if a defendant were to make multiple threats to successive judges or even to multiple judges on the same court, there might be some reason to suspect that the threats were intended as a recusal device." 26 F.3d at 1006. In this case, Ms. Osborn's underlying charge is due to threatening a judge. Prior to Ms. Osborn's competency hearing on October 5, 2015, Ms. Osborn allegedly sent a threatening postcard to this Court. On October 23, 2015, Ms. Osborn allegedly sent another threatening postcard to this Court. There is every indication to believe that if this case were to be transferred to another judge following recusal, Ms. Osborn would engage in exactly the same behavior and send threatening correspondence to the next judge, effectively stymieing the judicial process.

Second, this Court also finds Ms. Osborn's mental illness to be relevant in regard to the seriousness of her threats. Not only does she remain in custody, but her threats exhibit strong connections to her delusions and fall in line with the prior history of delusions identified forensic evaluation conducted by Dr. Lesli Johnson, Ph.D, diagnosing her with Delusional Disorder, Mixed Type (Forensic Evaluation at 28).[1] Ms. Osborn's threats are frequently tied to assistance

---

[1] Dr. Johnson was the only expert who testified at the hearing, and there was no objection to her credentials or to her diagnosis of delusional disorder by either the Defendant or the Government. What defense counsel objected to was the part of Dr. Johnson's opinion determining that Defendant could not assist counsel.

from religious deities, such as, "I hope my friend the angel moroni rips the penis out between your legs for the thoughts in your head," or "I talked to the virgin mary [illegible] and she told me I was the creation of a drop of water." At other times, Ms. Osborn's threats are tied to supernatural powers or impossibilities: I will "give you a sex change. Don't think I can't do it because I can," or "I saw Jehova and he said I was going to Wa. D.C. to be president." The unrealistic and unbelievable nature of Ms. Osborn's threats, compared to the quite serious threats such as in *Greenspan*, provide further support for denying Ms. Osborn's Motion.

Thus, this Court finds that Ms. Osborn's threats are "made only in an attempt to obtain a different judge, to delay the proceedings, to harass, or for other vexatious or frivolous purpose," in which recusal is not warranted "even if the judge learned of the threats from a third person such as a federal agent." *Greenspan*, 26 F.3d 1006.

## CONCLUSION

The Tenth Circuit has emphasized that "[t]here is as much obligation for a judge not to recuse when there is no occasion for him to do so as there is for him to do so when there is. *See United States v. Cooley*, 1 F.3d 985, 994 (10th Cir. 1993); *Nichols v. Alley*, 71 F.3d 347, 351 (10th Cir. 1995). As I find that Defendant's Motion provides no basis for my recusal, I shall continue meeting this obligation by presiding over this case.

SO ORDERED

_____
**UNITED STATES DISTRICT JUDGE**